Stephen O'Neill (SBN 115132)
oneill.stephen@dorsey.com
Thomas T. Hwang (SBN 218678)
hwang.thomas@dorsey.com
**DORSEY & WHITNEY LLP**
305 Lytton Ave
Palo Alto, CA  94301
Telephone: (650) 857-1717
Facsimile:  (650) 857-1288

Kent J. Schmidt (SBN 195969)
schmidt.kent@dorsey.com
**DORSEY & WHITNEY LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, CA  92626-7655
Telephone: (714) 800-1400
Facsimile:   (714) 800-1499

Attorneys for Plaintiff
U.S. Bank National Association

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, a national banking association<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Red Carpet Acquisition Corp., a Delaware corporation<br><br>　　　　　Defendant. | CASE NO: _____<br><br>**COMPLAINT FOR:**<br><br>(1) DECLARATORY JUDGMENT;<br>(2) INTENTIONAL INTERFERENCE WITH CONTRACT;<br>(3) AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS;<br>(4) COMMON COUNT (MONEY HAD AND RECEIVED); AND<br>(5) UNJUST ENRICHMENT |

COMPLAINT

Plaintiff U.S. Bank National Association ("U.S. Bank"), a national banking association, files this Complaint and alleges as follows.

## NATURE OF THE ACTION

1. This is an action by U.S. Bank to obtain certain interim and permanent judicial relief relating to a $16 million default on a loan made pursuant to a Credit Agreement (as defined and alleged below).

2. U.S. Bank is not seeking judicial relief against the borrower in this action.

3. Instead, U.S. Bank seeks relief with respect to certain property which is being held or will be received by an affiliate of the borrower that is obligated on a liability that is part of U.S. Bank's collateral.

4. On information and belief, the affiliate is expecting receipt of certain federal and state tax refunds related to that liability, but that those tax refunds, the affiliate's sole or principal assets that can be used to satisfy that liability, will be diverted to other purposes unless relief sought by U.S. Bank is granted.

## THE PARTIES

5. U.S. Bank is a national banking association with its principal place of business in Ohio.

6. Red Carpet Acquisition, Corp., ("Red Carpet") is a Delaware corporation with its principal place of business at c/o Encore Consumer Capital, 111 Pine Street, Suite 1825, San Francisco, California 94111.

## JURISDICTION AND VENUE

7. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8. There is complete diversity of citizenship based on the following:
   a. U.S. Bank is a citizen of Ohio.
   b. Red Carpet is a citizen of Delaware.

9. In light of the amount in controversy and the diversity of the parties, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

1
COMPLAINT

10. Venue is proper in this District, *inter alia*, pursuant to 28 U.S.C. §1391(b), because all or a substantial part of the events, transactions or omissions giving rise to the claims in this Complaint occurred in this judicial district, and have caused damages to Plaintiff U.S. Bank in this District.

## FACTS

### A. The Agreements

#### 1. Credit Agreement

11. On or about December 15, 2015, U.S. Bank, acting as administrative agent and as the sole lender, and LORAC Cosmetics, LLC ("LORAC Cosmetics" or the "Borrower") entered into a Credit Agreement (together with all amendments thereto, referred to herein as the "Credit Agreement").

12. Pursuant to the Credit Agreement, LORAC Cosmetics became indebted to U.S. Bank in an amount now in excess of $16 million.

13. On or about September 30, 2016, U.S. Bank, acting as administrative agent and as the sole lender, and LORAC Cosmetics entered into a First Amendment to Credit Agreement.

14. On or about December 13, 2017, U.S. Bank, acting as administrative agent and sole lender, and LORAC Cosmetics entered into a Waiver and Second Amendment to Credit Agreement.

15. On March 16, 2018, U.S. Bank, acting as administrative agent and sole lender, entered into a Forbearance and Third Amendment to Credit Agreement (the "Third Amendment") with LORAC.

#### 2. Guaranty

16. On or about December 15, 2015, the parent company of LORAC Cosmetics, LORAC Midco, LLC ("LORAC Midco" and together with LORAC Cosmetics, "LORAC"), executed a Guaranty (the "Guaranty") in favor of U.S. Bank, as administrative agent and as the sole lender.

2
COMPLAINT

17. Among other things, pursuant to Section 2 of the Guaranty, LORAC Midco provided an "absolute, unconditional and continuing guaranty of payment and performance" of the obligations of LORAC Cosmetics, the Borrower.

### 3. Security Agreement

18. On or about December 15, 2015, LORAC Cosmetics and LORAC Midco, executed a Pledge and Security Agreement and Irrevocable Proxy (the "Security Agreement").

19. Pursuant to Section 2 of the Security Agreement, LORAC pledged to U.S. Bank, as the administrative agent, substantially all of LORAC's personal property, including, without limitation, all accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, inventory, investment property, credit rights, pledged collateral and intellectual property, as security for obligations under the Credit Agreement and Guaranty.

### B. The Breach and Default

20. LORAC Cosmetics sells a line of cosmetics which are sold in retail stores. As a result of recent developments in its business, the financial condition of LORAC Cosmetics has significantly deteriorated.

21. These developments in LORAC Cosmetics' business and changes in LORAC Cosmetics' financial condition resulted in one or more Events of Default under the Credit Agreement.

22. Pursuant to Section 3.1 of the Third Amendment, LORAC acknowledged that it was in default on the Credit Agreement (as amended).

23. On March 16, 2018, LORAC appointed a Chief Restructuring Officer with authority to sell the assets of LORAC other than the liability of the Defendant that is the subject matter of this litigation. In return, U.S. Bank agreed, on the terms and conditions set forth therein, to forbear from exercising its rights and remedies against LORAC, but not against Red Carpet, to permit that sale.

24. LORAC Cosmetics is currently indebted to U.S. Bank under the Credit Agreement and the other "Loan Documents" (as defined therein) in an amount in excess of $16 million.

### C. Demands on LORAC and Red Carpet

25. As a result of Borrower LORAC Cosmetics' debt and default, U.S. Bank has exercised its remedies pursuant to the Loan Documents by (a) terminating the lending commitments under the Credit Agreement, (b) demanding payment in full of the obligations from LORAC Cosmetics and LORAC Midco, and (c) sending notice (the "Notice of Assignment") to Red Carpet demanding that it pay all amounts owed by Red Carpet to LORAC Cosmetics or LORAC Midco directly to U.S. Bank, pursuant to Section 9-406 of the Uniform Commercial Code ("UCC").

26. Neither LORAC Cosmetics nor LORAC Midco has paid the amounts due and owing to U.S. Bank under the Loan Documents, and neither has the funds to pay the debt.

### D. Diversion of Funds to Red Carpet

27. According to financial statements of LORAC Cosmetics delivered to U.S. Bank regularly through January, 2018, Red Carpet was liable and indebted to LORAC in an amount (the "Red Carpet Liability") in excess of $1,083,347.00. As part of its due diligence and discussions with LORAC, U.S. Bank has been made aware that (a) the Red Carpet Liability was incurred to enable Red Carpet to make federal and state tax payments, (b) Red Carpet expects to receive certain federal and state tax refunds in an amount of approximately $1,000,000 ("Tax Refunds") as a result of LORAC's subsequent losses and (c) subsequent to U.S. Bank's Notice of Assignment to Red Carpet under UCC Section 9-406, LORAC, operating under the control of Red Carpet, decided to reclassify the Red Carpet Liability as a distribution to Red Carpet, thereby eliminating Red Carpet's liability to LORAC.

28. U.S. Bank sought, as part of its agreements with LORAC and Encore Consumer Capital Fund III, L.P., the controlling owner of Red Carpet, to obtain

assurances that Red Carpet would use the Tax Refunds to repay its liability to LORAC. Red Carpet refused to provide such assurance.

29. Red Carpet, as an account debtor to LORAC, is obligated to pay all amounts it owes to LORAC to U.S. Bank as a secured creditor, as a result of U.S. Bank's Notice of Assignment and pursuant to UCC Section 9-406.

30. LORAC, at the direction of Red Carpet, determined to reclassify the advance made by LORAC to Red Carpet as a distribution after it received U.S. Bank's Notice of Assignment. Accordingly, such reclassification is ineffective against U.S. Bank pursuant to UCC Section 9-405.

31. LORAC, at the direction of Red Carpet, determined to reclassify the advance made by LORAC to Red Carpet as a distribution knowing that such reclassification would result in funds legally available for payment of LORAC's creditors being diverted to its equity owners. Such reclassification was therefore made with the intent to hinder, delay or defraud creditors of LORAC, and constitutes a fraudulent transfer under California Civil Code Section 3439(a)(1).

32. LORAC, at the direction of Red Carpet, determined to reclassify the advance made by LORAC to Red Carpet as a distribution, for which LORAC did not receive fair or reasonably equivalent value, at a time when LORAC was (a) insolvent, (b) had unreasonably small remaining assets in relation to the reclassification and (c) had incurred debts beyond its ability to pay them. Such reclassification therefore constitutes a fraudulent transfer under California Civil Code Sections 3439.04(a)(2)(A) and (B) and Section 3439.05.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

33. U.S. Bank repeats and re-alleges each and every allegation set forth in paragraphs 1 through [32], above, as if fully set forth herein.

34. Red Carpet is liable to LORAC in an amount in excess of $1,083,347.00. On information and belief, this liability was incurred by Red Carpet to enable Red Carpet to pay taxes for which it was liable as a result of the income of LORAC.

35. On information and belief, the only source of funds available to Red Carpet to repay LORAC on its liability is the Tax Refunds.

36. Red Carpet is an "account debtor" of LORAC and, pursuant to the Security Agreement, LORAC is an "assignor" to U.S. Bank ("assignee") as those terms are used and/or defined in Sections 9-102, 9-406 and 9-607 of the UCC.

37. Pursuant to its remedies under the Loan Documents and Sections 9-406 and 9-607 of the UCC, U.S. Bank has provided "notification of assignment" requiring Red Carpet to make payment of the amount of its liability to LORAC to U.S. Bank.

38. An actual case and controversy exists between U.S. Bank and Red Carpet in that Red Carpet, on information and belief, contends that it has no obligation to U.S. Bank and U.S. Bank contends that Red Carpet, as an account debtor in receipt of a notification of assignment, owes money to U.S. Bank.

39. U.S. Bank seeks an adjudication of this dispute and a declaration of its rights as an assignee.

## SECOND CAUSE OF ACTION

### (Intentional Interference with Contractual Relations)

40. U.S. Bank repeats and re-alleges each and every allegation set forth in paragraphs 1 through [39], above, as if fully set forth herein.

41. U.S. Bank and LORAC Cosmetics are parties to the Credit Agreement. LORAC Midco is party to the Guaranty, and LORAC Cosmetics and LORAC Midco are parties to the Security Agreement.

42. At all times relevant to this action, Red Carpet has known of the Loan Documents, including the fact that substantial sums are owed by LORAC to U.S. Bank.

43. After its receipt of U.S. Bank's Notice of Assignment under Section 9-406 of the Uniform Commercial Code, Red Carpet caused LORAC to reclassify a liability of

at least $1,083,347.00 owed to LORAC as a distribution. This reclassification is ineffective against U.S. Bank pursuant to Section 9-405 of the Uniform Commercial Code.

44. Red Carpet has received or soon will receive substantial Tax Refunds from state and federal tax payments which it owes to LORAC and, in turn, LORAC owes to U.S. Bank.

45. Red Carpet has no other assets that can be used to satisfy its liability to LORAC.

46. Red Carpet has refused to enter into agreements assuring U.S. Bank that the Tax Refunds will be used to satisfy its obligations to LORAC.

47. U.S. Bank will be harmed if Red Carpet uses the funds received from the Tax Returns for purposes other than to repay the Red Carpet Liability owed to LORAC, with such payment directed to U.S. Bank as assignee.

## THIRD CAUSE OF ACTION

**(Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code §§ 3439.04, 3439.05, and 3439.07)**

48. U.S. Bank repeats and re-alleges each and every allegation set forth in paragraphs 1 through [47], above, as if fully set forth herein.

49. Red Carpet entered into an agreement with LORAC pursuant to which Red Carpet incurred a liability to LORAC for approximately $1,083,347.00.

50. Such liability was incurred by Red Carpet to enable Red Carpet to pay taxes for which it was liable as a result of the income of LORAC.

51. Red Carpet is the controlling equity owner of LORAC.

52. Red Carpet caused LORAC to reclassify the Red Carpet Liability as a distribution, at a time when LORAC was insolvent.

53. LORAC received no value in exchange for the reclassification of the liability as a distribution.

7
COMPLAINT

54. Red Carpet caused LORAC to reclassify the Red Carpet Liability as a distribution, when it had full knowledge that LORAC did not have sufficient assets to repay its indebtedness to U.S. Bank.

55. Accordingly, the reclassification of Red Carpet's liability to LORAC as a distribution is avoidable as fraudulent and should be avoided and may be recovered from Red Carpet pursuant to Cal. Civ. Code § 3439.07.

## FOURTH CAUSE OF ACTION

### (Common Count - Money Had and Received)

56. U.S. Bank repeats and re-alleges each and every allegation set forth in paragraphs 1 through [55], above, as if fully set forth herein.

57. Red Carpet is the controlling equity owner of LORAC.

58. U.S. Bank has provided "notification of assignment" requiring Red Carpet to make payment of the amount of its liability to LORAC to U.S. Bank.

59. Red Carpet has received or soon will receive substantial Tax Refunds from state and federal tax payments.

60. The Tax Refunds are the sole source of funds available to Red Carpet to pay its liability to LORAC.

61. Red Carpet caused LORAC to reclassify the Red Carpet Liability as a distribution after it received U.S. Bank's notice of assignment.

63. Red Carpet has Red Carpet has no liabilities other than its liability to LORAC.

62. Red Carpet has refused to enter into agreements assuring U.S. Bank that the Tax Refunds will be used to satisfy its obligations to LORAC.

63. U.S. Bank seeks a judgment against Red Carpet for the amount of Red Carpet's liability to LORAC in the amount of no less than $1,083,347.00, which was assigned to U.S. Bank, and for turnover of the amounts received from the Tax Refunds, the only assets of Red Carpet available to pay that liability.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment/Restitution)

64. U.S. Bank repeats and re-alleges each and every allegation set forth in paragraphs 1 through [63], above, as if fully set forth herein.

65. Red Carpet has received or soon will receive substantial Tax Refunds from state and federal tax payments.

66. Red Carpet owes $1,083,347.00 to LORAC and, pursuant to the Loan Documents and U.S. Bank's rights thereunder, in turn, that liability was assigned to U.S. Bank. The Tax Refunds are the sole source of funds available to Red Carpet to pay its liability to LORAC.

67. Red Carpet caused LORAC to reclassify the Red Carpet Liability as a distribution.

68. U.S. Bank, as assignee of LORAC, seeks a judgment against Red Carpet for restitution in the amount of no less than $1,083,347.00.

## PRAYER

Plaintiff U.S. Bank respectfully requests and prays for judgment as follows:

A. That the Court award judgment in favor U.S. Bank on all causes of action set forth above;

B. That the Court declare that U.S. Bank is an assignee of Red Carpet's debt and obligations to LORAC Cosmetics pursuant to a notice of assignment;

C. That the Court award U.S. Bank pre-judgment and post-judgment interest on any award of damages;

D. That the Court award costs of the proceedings herein;

E. That the Court award U.S. Bank attorney fees;

F. That the Court grant such other and further relief as it deems just and proper.

DATED: March 21, 2018

DORSEY & WHITNEY LLP

By_____
Kent J. Schmidt
Attorneys for U.S. Bank National Association

## DEMAND FOR TRIAL BY JURY

Plaintiff U.S. Bank National Association demands a jury trial pursuant to Fed. R. Civ. P. 38(b) on all claims, defenses and counterclaims so triable.

DATED: March 21, 2018             DORSEY & WHITNEY LLP

By _____
Kent J. Schmidt
Attorneys for Plaintiff U.S. Bank National Association